## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NIKOLAI ULIANOV,**

                **Plaintiff,**

     **v.**

**MARCO RUBIO,[1] Secretary of State,**
***et al.,***

                **Defendants.**

**Case No. 24-cv-3443 (GMH)**

## <u>MEMORANDUM OPINION</u>

Plaintiff Nikolai Ulianov is a Russian citizen and software engineer seeking a nonimmigrant work visa. On February 26, 2024, Plaintiff was interviewed concerning his nonimmigrant visa application by the Consular Section of the U.S. Embassy in Warsaw, Poland. Shortly after the interview, Plaintiff was notified that his visa application was refused under Section 221(g) of the Immigration and Nationality Act ("INA") and subject to "administrative processing." As of the date of this Memorandum Opinion, Plaintiff's visa application remains refused and subject to administrative processing.

Plaintiff brings this suit to compel the Secretary of State and the Director of the National Vetting Center of the Department of Homeland Security to promptly complete the administrative processing and adjudication of his visa application. Plaintiff alleges four causes of action arising under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), 706(2), claiming that the delay in processing his visa application is

---

[1] The current Secretary of State Marco Rubio is substituted as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

unreasonable and seeking an order compelling the government to timely adjudicate the application. Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, primarily arguing that Plaintiff's claims fail for two threshold reasons: (1) that Plaintiff fails to allege a discrete, non-discretionary duty sufficient to state a claim for unreasonable delay under the Mandamus Act or the APA; and (2) that Plaintiff's claims are barred from judicial review under the doctrine of consular nonreviewability.

Upon thorough consideration of Defendants' motion and the record,[2] the Court finds that, although Plaintiff has identified a discrete, nondiscretionary duty for a consular officer to issue or refuse a visa, Defendants fulfilled this duty by refusing his application under Section 221(g) of the INA.[3]  Because Plaintiff has failed to identify any clear, nondiscretionary duty for the consular officer to do anything more with respect to his visa application, the motion to dismiss will be granted.

## I.    BACKGROUND

### A.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*., authorizes consular officers to issue nonimmigrant visas to foreign nationals seeking to enter the United States.  *See*

---

[2] The docket entries relevant to this Memorandum Opinion are (1) the Complaint, ECF No. 1; (2) Defendants' Motion to Dismiss, ECF No. 8; (3) Plaintiffs' Opposition, ECF No. 9; (4) Defendants' Reply, ECF No. 10; and (5) Plaintiffs' Notice of Supplemental Authority, ECF No. 11. Page numbers cited herein are those assigned by Court's CM/ECF system, and not the page numbers included in the filed document.

[3] Today, the Court issues opinions on motions to dismiss in five other cases involving, like this one, plaintiffs who have alleged that the government, including consular officers and the Department of State, has unreasonably delayed the adjudication of their visa applications:  *Naseri v. Rubio*, No. 24-cv-2125; *Forouzandeh v. Rubio*, No. 24-cv-2191; *Moradi v. Rubio*, No. 24-cv-2902; *Dehshiri v. Rubio*, No. 24-cv-3098; and *Esmaeilzadeh v. Rubio*, No. 25-cv-76. The Court has given each case individual attention.  Ultimately, however, the conclusion is the same in each matter:  dismissal is necessitated because the plaintiffs have failed to identify any unexercised nondiscretionary duty with respect to the adjudication of their applications.  Although each plaintiff has alleged distinct harms from the delays in the processing of their applications, the procedure by which each application was refused and placed in administrative processing is nearly identical.  Because that procedure forms the basis for any potential relief under the Mandamus Act and APA, the government's motions to dismiss employ substantially similar reasoning in each case, and, unsurprisingly, the Court's legal analysis granting those motions is also substantially the same.

8 U.S.C. § 1201; 22 C.F.R. § 41.111.  One method by which nonimmigrants seek to enter the United States is through work-sponsored visas, including visas issued to allow U.S companies to temporarily employ a foreign worker in a "special knowledge" capacity, if the foreign worker was previously employed by a foreign qualifying organization ("L-1 visas").  *See* 8 C.F.R. § 214.2(l)(1)(ii) (defining an intracompany transferee as "an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization . . . and who seeks to enter the United States temporarily in order to render his or her services . . . in a capacity that . . . involves specialized knowledge").

A nonimmigrant work visa application is initiated when an employer files an I-129 Petition for Non-Immigrant Worker on behalf of a foreign worker.  *See* 8 C.F.R. § 214.2(l)(2) (indicating that a U.S. employer seeking to classify a foreign national as an intracompany transferee must file a petition with USCIS); *see I-129, Petition for a Nonimmigrant Worker*, U.S. Citizenship & Immigration Servs, https://www.uscis.gov/i-129 [https://perma.cc/5T58-RQ2X].  Once the petition is approved, the foreign national employee, as well as his or her spouse and minor children, *see* 8 C.F.R. § 214.2(l)(7)(ii), may apply for a nonimmigrant visa by submitting a DS-160 visa application.  *See* 22 C.F.R. § 41.103 ("Every alien seeking a nonimmigrant visa must make an electronic application on Form DS-160 . . ."); 8 U.S.C. § 1202(c) ("Every alien applying for a nonimmigrant visa . . . shall make application therefor in such form and manner as shall be by regulations prescribed.").  Once the application is submitted and fees paid, *see* 22 C.F.R. § 41.107, the applicant is required to attend an in-person interview with a consular officer.  8 U.S.C. § 1202(h); *see also id.* § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer.").  The INA places the burden of proof on the applicant to establish eligibility to receive a visa.  8 U.S.C. § 1361.  "The consular officer shall ensure that the application is fully and properly

completed . . . ."  22 C.F.R. § 41.103(b).  Once the application is fully completed and executed,

"the consular officer must issue the visa, [or] refuse the visa."[4]  *Id.* § 41.121(a); *see also* 8 U.S.C.

§ 1202(e) ("The application for a nonimmigrant visa or other documentation as a nonimmigrant

shall be disposed of as may be by regulations prescribed.").  All "[n]onimmigrant visa refusals

must be based on legal grounds, such as . . . INA 221(g), . . . or other applicable law."  22 C.F.R.

§ 41.121(a).

Under INA Section 221(g)—the statutory provision under which Plaintiff's visa applica-

tion was refused here—a consular officer shall refuse a visa if it appears that the application does

not comply with the INA.  *See* 8 U.S.C. § 1201(g); *see also* 22 C.F.R. § 40.6 ("A visa can be

refused only upon a ground specifically set out in the law or implementing regulations."); 9 For-

eign Affs. Manual ("FAM") 301.4-1(b)(14) (characterizing a Section 221(g) refusal as a refusal in

which the "[a]pplication does not comply with the INA").  Specifically, a visa shall be refused

under INA Section 221(g) if the consular officer determines "from statements in the application or

in the papers submitted therewith," that (1) the applicant is ineligible to receive a visa under Sec-

tion 1182 of the INA, which identifies classes of inadmissible aliens; (2) the application itself fails

to comply with the INA or its regulations; or (3) "the consular officer knows or has reason to

believe that such alien is ineligible to receive a visa . . . under section 1182 [of the INA], or any

other provision of law."  8 U.S.C. § 1201(g); *see also id.* § 1182.  Among other things, Section

1182 permits consular officers to refuse visas based on health-related grounds, criminal-related

grounds, and security-related grounds.  *See id.* § 1182(a)(1)–(10).  Upon refusing a visa, the

---

[4] In rare circumstances, the regulation also permits a consular officer to "discontinue granting the visa" pursuant to "an outstanding order under INA 243(d)."  22 C.F.R. § 41.121(a); *see also* 8 U.S.C. § 1253(d).  That provision allows the Secretary of State to order consular officers to discontinue granting visas to nationals from a foreign country which denies or unreasonably delays accepting its own citizens who are subject to removal from the United States.  *See* 8 U.S.C. § 1253(d).  There is no such order at issue in this case.

consular officer is required to "inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a mechanism . . . to overcome the refusal." 22 C.F.R. § 41.121(b)(1).

A refusal of a nonimmigrant visa under Section 221(g) may be overcome. *See* 9 FAM 403.10-4 ("[T]he applicant is entitled to present evidence to overcome a presumption or finding of ineligibility. It is the policy of the U.S. Government to give the applicant every reasonable opportunity to establish eligibility to receive a visa."); *see also* 8 U.S.C. § 1361 ("If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa . . . no visa or other document required for entry shall be issued to such person, . . . *unless* he establishes to the satisfaction of the Attorney General that he is not inadmissible under any provision of this chapter." (emphasis added)); *see generally* 9 FAM § 306.2-2(A)(a) (describing administrative process by which a visa applicant may overcome a visa refusal under Section 221(g)); *see also* U.S. Dep't of State, Admin. Processing Info., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/44NK-RVZE] ("It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible."). That said, according to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on the visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

**B.    Factual Background**

Plaintiff Nikolai Ulianov, a Russian national, is employed by Google LLC ("Google"), a U.S. company. ECF No. 1, ¶¶ 2–3, 52. Google began the process of transferring Plaintiff to the United States by preparing a I-129 petition. ECF No. 1, ¶¶ 3–4, 52–54. Shortly thereafter, on February 26, 2024, after filing his nonimmigrant visa application, Plaintiff interviewed with a

consular officer at the U.S. Embassy in Warsaw, Poland. *Id.*, ¶¶ 54–57. After the interview, and on the same day, he received a notice from the consular officer stating that his application had been refused under section 221(g) of the U.S. Immigration and Nationality Act and placed in "administrative processing." *See id.*, ¶ 57. That application has remained "refused" under Section 221(g) and subject to "administrative processing" since the date of his interview. *See id.*, ¶ 58. Plaintiff has alleged that the delay in completing administrative processing has caused severe hardship, including financial, emotional, and professional strains. *Id.*, ¶¶ 61–65.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

The "plaintiff bears the burden of establishing" subject matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's [subject-matter] jurisdiction" and concerns a court's ability to hear a particular claim. *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 81 (D.D.C. 2018) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)); *see* Fed. R. Civ. P. 12(b)(1). In weighing a Rule 12(b)(1) motion, courts must "'accept as true all of the factual allegations contained in the complaint' and draw all reasonable inferences in favor of the plaintiff." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (quoting *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008)). But courts are "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Id.* (alteration in original) (quoting *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001)). Further, "a court 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *O'Gilvie*

*v. Corp. for Nat'l Cmty. Serv.*, 802 F. Supp. 2d 77, 80–81 (D.D.C. 2011) (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

**B.      Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) challenges the complaint's sufficiency to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Courts are called to "accept[] as true" the well-pleaded factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and to construe them "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016).  *See also Mirv Holdings, LLC v. U.S. Gen. Servs. Admin.*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020) ("In evaluating a motion to dismiss under Rule 12(b)(6), 'the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012))).  Courts may also weigh "documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice."  *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (alterations in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).  Ultimately, the complaint itself "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The moving party bears the burden of "prov[ing] that no legally cognizable claims for relief exist."  *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)).

### III.    DISCUSSION

Plaintiff alleges three causes of action arising under the Mandamus Act and the APA claiming that the delay in processing his visa application is unreasonable and seeking an order compelling the government to promptly adjudicate the application. *See* ECF No. 1 at 22–29. Defendants move to dismiss on two independent grounds.[5] First, they contend that Plaintiff has failed to identify a clear, non-discretionary duty requiring Defendants to further process his visa application following its refusal. *See* ECF No. 8 at 11–15. Second, they argue that the doctrine of consular nonreviewability bars judicial review given that the consular officer has refused Plaintiff's visa application. *See id.* at 15–19. Ultimately, the Court finds it unnecessary to resolve the second argument because it agrees with the Defendants on the first. Accordingly, it will grant Defendants' motion to dismiss on that basis.

---

[5] Defendants also argue that Plaintiff has not established that he has standing to sue one of the Defendants—the Director of the Department of Homeland Security's National Vetting Center—because Plaintiff has failed to allege that official plays any ongoing role in the adjudication of the subject visa application and therefore cannot provide the relief requested. *See* ECF No. 8 at 10–11. The Court disagrees. To establish standing to sue, a plaintiff must show that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff has alleged that the Director of the National Vetting Center is involved in administrative processing because the National Vetting Center "handles security vetting for all nonimmigrant cases" and "[m]ost, if not all, of the 'administrative processing' that is unreasonably delaying adjudication of Plaintiff Ulianov's application occurs under his jurisdiction." ECF No. 1, ¶ 30. Taking all allegations as true and drawing all reasonable inferences in Plaintiff's favor, *see Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011), he has sufficiently alleged that the Director of the National Vetting Center is involved in administrative processing of nonimmigrant visa applications such that the official has the "ability to redress [Plaintiff's] grievances." *Sarshartehran v. Rubio*, No. 24-v-633, 2025 WL 1261787, at *1, *3 & n.3 (W.D. Va. May 1, 2025) (permitting case against the director of the National Vetting Center when the plaintiff alleged he "handles security vetting for nonimmigrant visa applications" and "plaintiffs allege[d] that most, if not all, of the administrative processing of their visa applications 'occurs under [his] jurisdiction'"). In any case, for the reasons stated, the Court will dismiss this case against *all* Defendants for Plaintiff's failure to identify a discrete, nondiscretionary duty. *Cf. Parashkooh v. Platek*, No. 24-cv-1709, 2025 WL 1732518, at *1 (E.D. Va. June 18, 2025) (not addressing standing in visa mandamus claim brought against director of the National Vetting Center but dismissing the case for failure to establish a nondiscretionary duty); *Khalilijourabchian v. Hawkins*, No. 24-cv-2283, 2025 WL 1655330, at *1 n.2 (E.D. Va. June 10, 2025) (same); *Ashardi v. Platek*, No. 24-cv-1632, 2025 WL 1570967, *1 (E.D. Va. June 3, 2025) (same).

## A.    Non-Discretionary Duty

A plaintiff asserting a claim that an agency has unreasonably delayed performing an act may proceed under either the APA or the Mandamus Act.  *See* 5 U.S.C. § 706(1) (granting the reviewing court authority to "compel agency action unlawfully withheld or unreasonably delayed."); 28 U.S.C. § 1361 (granting district courts the jurisdiction to compel "any agency . . . to perform a duty owed to the plaintiff").  Here, Plaintiff proceeds under both, arguing that Defendants have a nondiscretionary duty to adjudicate the subject visa applications within a reasonable time and that they failed to do so because his application remains in "administrative processing." *See* ECF No. 1 at 15–17.  Defendants respond that Plaintiff's claims should be dismissed because his visa application was refused, and he has not identified a clear, non-discretionary duty requiring the consular officer to take any action following the refusal.  *See* ECF No. 8 at 11–15.  Thus, according to Defendants, there is no action that this Court could compel under either the Mandamus Act or APA, let alone one it could order to happen faster.  The Court agrees with Defendants.

"Mandamus is an 'extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.'"  *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *in re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000)).  To obtain a writ of mandamus, a petitioner must show, among other things, "that the agency has violated 'a crystal-clear legal duty.'"  *Id.* (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)).  Similarly, to proceed with an APA claim for unreasonable delay, a plaintiff must allege that an agency has "failed to take a discrete agency action that it is required to take."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).  Therefore, to proceed under either the APA or the Mandamus Act on a claim of unreasonable delay, a plaintiff must allege "that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to

take that action." *Sharifishourabi v. Blinken*, No. 23-cv-3382, 2024 WL 3566226, at \*5 (D.D.C. July 29, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)); *see also Norton*, 542 U.S. at 65 ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law).").

In response to Plaintiff's argument that Defendants have a discrete and nondiscretionary duty to adjudicate the subject visa application within a reasonable time and that they failed to do so because the application remains pending in "administrative processing," *see* ECF No. 9 at 18–32, Defendants contend that the D.C. Circuit's recent unpublished decision in *Karimova v. Abate* is dispositive of this issue and of Plaintiffs' claims more generally. *See* ECF No. 8 at 11–15 (discussing *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam)). Setting aside whether *Karimova* is binding on this Court because it is unpublished,[6] the Court finds—as other judges have—its reasoning persuasive and adopts it for purposes of this decision. *Datta*, 2025 WL 752643, at \*7 ("The Court agrees with the Circuit's analysis [in *Karimova*] and finds it persuasive."); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 260 (E.D.N.C. 2024)

---

[6] The root of the confusion as to whether *Karimova* should be treated as binding lies in two conflicting D.C. Circuit Rules which address the precedential value of the Circuit's unpublished decisions. *See* D.C. Cir. Rule 32.1(b)(1)(B); D.C. Cir. Rule 36(e)(2). Rule 32.1(b)(1)(B) states that unpublished decisions entered after January 1, 2002, "may be cited as precedent." D.C. Cir. Rule 32.1(b)(1)(B); *see also* Fed. R. App. P 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions . . . designated as 'unpublished,' . . . and . . . issued on or after January 1, 2007."). Clear enough. But then D.C. Circuit Rule 36(e)(2) seemingly takes that back; it states that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. Rule 36(e)(2). Given that every unpublished decision necessarily reflects the panel's determination that the decision has "no precedential value," under Rule 36(e)(2), when, if ever, may an unpublished decision properly "be cited as precedent" under Rule 32.1(b)(1)(B)? The D.C. Circuit has not clearly answered this question. *See Verizon v. FCC*, 770 F.3d 961, 968 n.11 (D.C. Cir. 2014) (noting the tension between D.C. Cir. R. 32.1(b)(1) and 36(e)(2) and citing an unpublished decision "for its persuasive authority, and adopt[ing] its dicta as a holding"); *Head v. Wilson*, 792 F.3d 102, 109 & n.9 (D.C. Cir. 2015) (refusing to rely on an unpublished opinion entered before 2002 as precedent but noting, *in dicta*, that unpublished opinions entered after January 1, 2002, "may be cited as precedent" despite the language of Rule 36(e)(2)). Defendant relies on *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011), in which the D.C. Circuit noted that an unpublished decision "has the force of precedent," citing Rule 32.1(b)(1)(B). *See* ECF No. 9 at 12 n.3. But *Khaksari* is itself an unpublished decision, making reliance on it questionable for the same reason that *Karimova*'s precedential value is in doubt.

("*Karimova* is unpublished and non-binding.  But the Court finds its reasoning persuasive. . . ."); *see also Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) (holding that "[t]he *Karimova* decision is fatal" to a claim brought under the APA); *Mojaver v. Garland*, No. 24-cv-0253, 2024 WL 4715419, at *2 (D.D.C. Nov. 07, 2024) ("*Karimova* addressed both mandamus and APA challenges to agency refusals of visa applications under INA § 221(g) for 'administrative processing' . . . and it is dispositive in this case." (internal citation omitted)); *Hemmat v. Blinken*, No. 23-cv-2085, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("The *Karimova* decision is fatal to Plaintiffs' claim of unreasonable delay."); *Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *1 (D.D.C. Sept. 6, 2024) ("[T]he Court agrees that the decision in *Karimova* requires the dismissal of this action[.]"); *but see Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 n.4 (D.D.C. 2024) ("*Karimova* is an unpublished opinion, and a 'panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition.'  This Court has considered *Karimova* but declines to follow it." (quoting D.C. Cir. R. 36(e)(2))); *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) ("This Court joins others in finding *Karimova* nonbinding."), *appeal docketed*, No. 25-5001 (D.C. Cir. Jan. 10, 2025).[7]

---

[7] Some judges—including the undersigned prior to this decision—have left the persuasive value of *Karimova* unresolved and dismissed the plaintiffs' unreasonable delay claims on the merits after application of the so-called "*TRAC* factors."  *See, e.g., Shoaie v. Blinken*, No. 24-cv-1513, 2024 WL 4697732, at *6 (D.D.C. Nov. 6, 2024) ("As other courts have done, the Court finds it need not conclusively determine the extent that *Karimova* upends prior reasoning because the Plaintiffs' claim of unreasonable delay fails on the merits."); *see also Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) [hereinafter, *TRAC*] (establishing factors courts may use to determine whether an agency action has been unreasonably delayed).  That option is not readily available in this case because the Defendants have, at this point, withheld seeking dismissal on the merits.  *See* ECF No. 8 at 7 & n.2.  In a footnote of their opposition, Defendants note that "[s]hould the Court deny this motion, the Government intends to move for judgment on the pleadings under *TRAC* as the complaint fails to state a claim for relief under the controlling standards of that case too."  *Id.* at 7 n.2.  The government's decision to take a piecemeal approach to this litigation disserves judicial economy and the efficient administration of justice.  *See Mahmoodi v. Altman-Winans*, No. 24-cv-2010, 2025 WL 763754, at *7 (D.D.C. Mar. 11, 2025) (noting that this "intentional, piecemeal" briefing strategy, "[w]hether . . . some form of litigation gamesmanship . . . or simply professional laziness . . . [,] expends judicial time and resources and imposes needless burdens on all parties").  Nonetheless, the Court will refrain from addressing the *TRAC* factors *sua sponte*—and prior to any input on their application from Plaintiff—in deference to "the principle of party presentation,

As this Court has recognized, unpublished D.C. Circuit opinions may "have persuasive value aside from any precedential value or lack thereof." *United States v. Bikundi*, 73 F. Supp. 3d 51, 55 n.1 (D.D.C. 2014) (citing *Verizon*, 770 F.3d at 968 n.11 (D.C. Cir. 2014)). Notably, unlike many of the Circuit's per curiam orders, *Karimova* was entered following oral argument and includes a rather lengthy exegesis of its legal reasoning. *Karimova*, 2024 WL 3517852, at *1 ("This case was considered on . . . oral arguments of the parties."); *see In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (noting that whether there was oral argument is a relevant factor in determining what weight to accord the Circuit's unpublished decisions); *Hart v. Massanari*, 266 F.3d 1155, 1178 (9th Cir. 2001) (noting that typically, one of the key differences between published and unpublished dispositions is the greater "judicial time and effort" invested in the former, while the latter is essentially "a letter from the court to parties familiar with the facts" briefly describing the decision and it's "essential rationale" (quoting Fed. Jud. Ctr., Standards for Publication of Judicial Opinions 3 (1973))). Thus, while *Karimova* may be an unpublished disposition, it more closely resembles a published opinion in that it offers a more "comprehensive factual account[] and precisely crafted holdings." *Hart*, 266 F.3d at 1178.

Further, the Court agrees with other judges that have found "*Karimova*'s facts . . . not meaningfully distinguishable from the facts at issue here." *Datta*, 2025 WL 752643, at *6; *see also Ramizi*, 745 F. Supp. 3d at 259 ("In short, the circumstances in *Karimova* are identical to this case."). As here, the plaintiff in *Karimova* was seeking a visa to enter the United States. *Karimova*, 2024 WL 3517852, at *2. After interviewing with a consular officer, she was told her application was "officially 'refused'" and placed in "administrative processing in order to verify qualification

---

*i.e.*, that "the parties frame the issues for decision" and the courts serve "as neutral arbiters of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

for [her requested] visa." *Id.* (alteration in original) (quoting the record). About a year later, while her application remained "refused" and in "administrative processing," she brought an unreasonable delay claim under the Mandamus Act and APA, arguing that the consular officer had "breached [her] duty to . . . make a final decision" on her visa application within a reasonable time, rooting the consular officer's duty to act in Section 555(b) of the APA. *Id.* at *2–3 (alterations in original) (quoting the record); *see* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time, each agency shall proceed to conclude a matter presented to it*." (emphasis added)). The plaintiff argued—again like Plaintiff here—that "the consul's duty 'is not discharged by a refusal . . . due to administrative processing, because that is not a final decision' on the visa application." *Karimova*, 2024 WL 3517852, at *2 (alteration in original) (quoting the record). By "final decision," she meant that "the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing." *Id.* at *3. In short, the facts of *Karimova* are substantially identical to those here.

The Court also finds *Karimova*'s legal reasoning persuasive. *See Datta*, 2025 WL 752643, at *7; *Ramizi*, 745 F. Supp. 3d at 260. The D.C. Circuit affirmed the district court's dismissal of the plaintiff's Mandamus Act and APA claims, holding that because the plaintiff's visa application was "officially refused" before being placed into administrative processing, the plaintiff's "'matter' ha[d] already been 'conclude[d].'" *Karimova*, 2024 WL 3517852, at *4 (second alteration in original) (quoting 5 U.S.C. § 555(b)). The court of appeals reasoned that by "officially refus[ing]" the visa application, the consular officer had done all the law required; that is, the plaintiff had "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." *Id.* (citing 22 C.F.R. § 42.81 and 8 U.S.C. § 1201(g)); *see* 22 C.F.R. § 42.81(a)

(obligating a consular officer, after a noncitizen has completed an application and participated in

an interview, to either "issue the visa" or "refuse the visa").  Nor had plaintiff "identified any law

'plainly prescrib[ing]' that the consular officer *not* put an officially refused visa application in

administrative processing."  *Karimova*, 2024 WL 3517852, at *3 (alteration in original) (emphasis

added) (quoting *Interstate Com. Comm'n v. N.Y., New Haven & Hartford R. Co.*, 287 U.S. 178,

204 (1932)).  According to the panel, "[n]othing in federal law speaks to the ability of a consul,

after making th[e] decision [to refuse a visa], to hold onto the application in case circumstances

later change in the applicant's favor, thereby saving the applicant the time and cost of filing a

whole new visa application."  *Id.* at *4.  Instead, "[i]f the consular officer gets enough new infor-

mation . . . the officer can determine *sua sponte* that the administrative processing is 'completed'

and may then re-open and re-adjudicate the applicant's case."  *Id.* at *2 (citing 9 FAM § 306.2-

2(A)(a)(2)).  The Circuit found that "[u]nless and until that happens . . . the visa application re-

mains officially refused," and there is no "adequate legal basis" that would compel the consular

officer "to make yet another 'final decision' on her already-refused visa application." *Id.* at *2, *6.

   The Court agrees with that legal analysis.  INA Section 1202(e) states that "[t]he applica-

tion for a nonimmigrant visa . . . *shall* be disposed of as may be by regulations prescribed."  8

U.S.C. § 1202(e) (emphasis added); *see also id.* § 1202(d) (stating "[a]ll nonimmigrant visa appli-

cations *shall* be reviewed and adjudicated by a consular officer" (emphasis added)).  The Code of

Federal Regulations directs that "[c]onsular officers *must* ensure that the [visa application[8]] is

properly and promptly processed in accordance with the applicable regulations and instructions."

22 C.F.R. § 41.106 (emphasis added).  Section 41.121(a), which provides greater detail on a

---

[8] Section 41.106 references Forms DS-160 and DS-156.  *See* 22 C.F.R. § 41.106.  Both DS-160 and DS-156 are application forms for filing nonimmigrant visas.  *See* 22 C.F.R. § 41.103(a).  Form DS-160 is submitted electronically, while the DS-156 must be signed by the applicant.  *See id.* § 41.103(b).

consular officer's duty to "adjudicate[e]" nonimmigrant visas, states that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa, [or] refuse the visa." *Id.* § 41.121(a); *see also id.* § 42.81(a) (requiring the same for an immigrant visa). A refusal "*must* be based on legal grounds, such as . . . INA 221(g) . . . or other applicable law." *Id.* § 41.121(a) (emphasis added). Those regulations impose a clear, non-discretionary duty on a consular officer to adjudicate a visa application by either granting or refusing it, which may be enforced via the Mandamus Act or APA. *See Datta*, 2025 WL 752643, at *7; *Yaghoubnezhad v. Stufft,* 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024) ("'Granting or refusing a final visa application is a mandatory agency action' under 22 C.F.R. §§ 41.106 and 41.121(a)" (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020))). As Plaintiff recognizes in his complaint when citing the FAM, a consular officer "cannot temporarily refuse, suspend or hold . . . for future action" a completed visa application. 9 FAM 403.7-3; ECF No. 1, ¶ 69. Rather, "[t]heir course of action is binary: issue or refuse." *Ramizi*, 745 F. Supp. 3d at 260; *see also Karimova*, 2024 WL 3517852, at *1 ("[O]nce the applicant properly applies, the consular officer—by regulation—'*must* issue' or 'refuse' the visa." (emphasis in original) (quoting 22 C.F.R. § 42.81(a)); *see also* 22 C.F.R. § 41.121(a) ("[T]he consular officer must issue the visa, [or] refuse the visa[.]"). And that is what the consular officer did here. Plaintiff concedes that his visa application was refused by the consular officer and remains refused to date. *See* ECF No. 1, ¶¶ 5, 57–58. That is all that the law requires. The consular officer having "officially refused" this visa application, the "'matter' has . . . been 'conclude[d],'" at least for purposes of any claim that may exist under the Mandamus Act or APA, because Plaintiff has "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." *Karimova*, 2024 WL 3517852, at *4 (alteration in original) (quoting 5

U.S.C. § 555(b)); *see also Datta*, 2025 WL 752643, *7 ("[T]he consul's refusal of plaintiff's visa application means that plaintiff's 'matter has already been conclude[d].'" (alteration in original) (quoting *Karimova*, 2024 WL 3517852, at *4)); *Ramizi*, 745 F. Supp. 3d at 260 ("[T]he consular officer 'refused' [the plaintiff's] visa application.  Accepting that allegation as true, [the defendants] have fulfilled their discrete, nondiscretionary duty under Section 42.81(a)." (internal citation omitted) (quoting the record)); *Yaghoubnezhad,* 734 F. Supp. 3d at 102 ("Once a consular officer either issues or refuses a visa, and provides a legal basis for doing so, nothing in the INA or its regulations require consular officers to do anything more.").  The State Department "thereby discharged its nondiscretionary duty."  *Yaghoubnezhad,* 734 F. Supp. 3d at 101.

Plaintiff responds that a consular officer's legally enforceable duty to adjudicate a visa application is discharged only when a "final" decision on the application is issued, and that has not occurred with respect to his applications because they appear to be stuck in post-refusal "administrative processing."  ECF No. 9 at 18–32.  But that argument flies in the face of *Karimova*.  "According to the Court of Appeals, the APA does not create a non-discretionary duty for defendants to revisit visa applications after they have been 'refused' under section 221(g), no matter what the consulate said it was doing next."  *Mojaver*, 2024 WL 4715419, at *3; *see also Deylami*, 2025 WL 219064, at *5 (following *Karimova* and holding that "[b]ecause refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that [the plaintiff] claims has been unreasonably delayed—further adjudicating his refused visa application.").  More, the requirement that a "refusal" under Section 41.121(a) be "final" is nowhere to be found in that regulation or any other.  *See* 22 C.F.R. § 41.121(a) (authorizing a "refusal[ ]" under Section 221(g)).  Nor can a requirement of finality be found in the INA—Section 1202(e) requires only that nonimmigrant visa applications be "disposed of" as prescribed by regulation.  *See* 8

U.S.C. § 1202(e); *see also id.* § 1202(d) (stating that "nonimmigrant visa applications shall be . . . adjudicated by a consular officer"). Nothing in the INA or its implementing regulations suggests that "dispos[ing] of" or "adjudicat[ing]" a nonimmigrant visa application requires more than reviewing and then "issu[ing]" or "refus[ing]" it. *See id.* § 1202(d)–(e); 22 C.F.R. § 41.121(a). "All told, a careful reading of the INA's regulations regarding . . . visa refusal reveals that officers have a duty to adjudicate completed visa applications. . . . Conspicuously absent . . . is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" *Yaghoubnezhad*, 734 F. Supp. 3d at 101.

Put another way, "nothing in section [41.121(a)] prevents a consular officer from refusing a visa application and then evaluating it further via administrative processing." *Ramizi*, 745 F. Supp. 3d at 260; *Karimova*, 2024 WL 3517852, at *3 (finding that the plaintiff had "not identified any law 'plainly prescrib[ing]' that the consular officer *not* put an officially refused visa application in administrative processing" (alteration in original) (emphasis added) (quoting *N.Y, New Haven & Hartford R. Co.*, 287 U.S. at 204)). In fact, the INA's implementing regulations explicitly contemplate further processing and opportunity for administrative relief after a visa has been refused pursuant to Section 221(g). For example, Section 41.121(b)(1) indicates that when a consular officer refuses a visa application, he or she must inform the applicant "whether there is, in law or regulations, a mechanism . . . to overcome the refusal." 22 C.F.R. § 41.121(b)(1). Further, Subsection (c) contemplates continuing review of visa applications by consular supervisors, *see id.* § 41.121(c) ("Nonimmigrant refusals must be reviewed . . . by consular supervisors . . . ."), and references the ability to "overcome . . . ineligibility . . . by the presentation of additional evidence," *id.* Subsection (d) explicitly contemplates the issuance of "advisory opinions" by the State Department "to the consular officer for assistance in considering the case further" after a "visa has

been refused." *Id.* § 41.121(d).  This process appears to be exactly what Plaintiff has experienced.

His visa application was refused by a consular officer, and he has submitted additional information

in the hope that it will "overcome the refusal." *Id.* § 41.121(b)(1); ECF No. 1, ¶¶ 57–58.  But that

"openness to reconsidering a prior refusal does not mean that the refusal was not an official agency

action." *Ramizi*, 745 F. Supp. 3d at 261.  Stated differently, "the possibility of reconsideration of

a refusal does not mean that the refusal was not a refusal." *Id.*  As the D.C. Circuit observed in

*Karimova*:

> After a consular officer makes an official decision refusing to issue a visa because
> the applicant has not carried her burden of showing eligibility, the official may then
> conclude that the applicant could perhaps still receive a visa eventually if circum-
> stances change.  As a result, the consular officer may choose to place an officially
> refused application in administrative processing. . . .  But that refusal may (or may
> not) be overcome with new information at a later date.  *See* 9 FAM § 306.2-2(A)(a).
> If the consular officer gets enough new information, sometimes from sources other
> than the applicant, the officer can determine *sua sponte* that the administrative pro-
> cessing is "completed" and may then re-open and re-adjudicate the applicant's case.
> *Id.* § 306.2-2(A)(a)(2).  Unless and until that happens, though, the visa application
> remains officially refused.

*Karimova*, 2024 WL 3517852, at *2.  Thus, not only has Plaintiff not "identified any law 'plainly

prescrib[ing]' that the consular officer *not* put an officially refused visa application in administra-

tive processing," *id.* at *3 (alteration in original) (emphasis added) (quoting *N.Y., New Haven &

Hartford R. Co.*, 287 U.S. at 204), the State Department's regulations expressly allow for consular

officers to do so and make clear that the decision to permit post-refusal administrative processing

is distinct from the refusal decision itself.

In this case, "[D]efendants already have taken definitive action"—they have refused Plain-

tiff's visa application—"and [Plaintiff is] effectively asking the Court to order [D]efendants to

'engage in discretionary re-adjudication of that action more quickly.'"  *Datta*, 2025 WL 752643,

*8 (quoting *Yaghoubnezhad*, 734 F. Supp. 3d at 104).  But Plaintiff has not identified any

cognizable basis in the law to root that duty. Again, a plaintiff seeking to bring a claim for unreasonable delay under both the APA and the Mandamus Act must assert that the agency in question has been tasked with a discrete, crystal-clear, nondiscretionary legal duty which the government did not fulfill. *See Norton*, 542 U.S. at 64 ("[A § 706(1) claim] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* [] action that it is *required* to take." (emphasis in original)); *In re Ctr. for Biological Diversity*, 53 F.4th at 670 ("A petitioner seeking mandamus must first establish that the agency has violated 'a crystal-clear legal duty.'" (quoting *In re Nat'l Nurses United*, 47 F.4th at 752)). In these circumstances, that means a plaintiff must establish that the government had a nondiscretionary duty to "take further action on [the] visa application" that has been placed in administrative processing following its refusal under Section 221(g). *Ramizi*, 745 F. Supp. 3d at 262; *see also Karimova*, 2024 WL 3517852, at *4–5 (articulating the duty the plaintiff claimed as one that would "dictate how the agency can handle her rejected paperwork after a decision has been made" or a "demand for a post-adjudication ban on holding her application administratively").

Plaintiff points to sections of the APA and the INA, and its implementing regulations, as potential sources of this duty. ECF No. 1, ¶¶ 9–11, 43–50. None of them suffices.[9] Any reliance

---

[9] Plaintiff also cites various provisions of the FAM as a potential source of the duty he claims. *See* ECF No. 1, ¶¶ 44, 46–48. The FAM is an internal policy document issued by the Department of State that describes, as relevant here, how it interprets consular officers' responsibilities under the INA to issue or refuse a visa application, and how consular officers may implement those responsibilities in the field. *See, e.g.*, 9 FAM 403.7–403.10; *see nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250–52 (D.C. Cir. 2014) ("An agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy."). Standing alone, it imposes no mandatory duty on Defendants enforceable under the Mandamus Act or APA. *See Ramizi*, 745 F. Supp. 3d at 263 (stating that "the FAM is an 'agency manual[] . . . which lack[s] the force of law" and "imposes no mandatory duty on Defendants" (alterations in original) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000))); *see also Avagyan v. Blinken*, No. 22-cv-2643, 2022 WL 19762411, at *5 (D.D.C. Sept. 29, 2022) (describing the FAM as "nothing more than general policy statements with no legal force" in case involving review of final agency actions (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807–08 (D.C. Cir. 2006)); *Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021) (noting that the FAM's language indicating the Department's "policy" of processing immediate relative visas within 30 days was "nonbinding" in a *TRAC* factor analysis). Even assuming that the FAM may create binding duties on the Department, Plaintiff has not identified any

on Section 555(b) of the APA is misplaced because *Karimova* expressly rejected it as a source of the duty.  2024 WL 3517852, at *3–4.  The court of appeals reasoned that Section 555(b) is a "general, good-governance principle[]" that "simply expresses 'a congressional view that agencies should act within reasonable time frames.'"  *Karimova*, 2024 WL 3517852, at *3 (quoting *TRAC*, 750 F.2d at 77); *see also* 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it").  It concluded that Section 555(b)'s "non-specific directive to all agencies" does not impose on consular officers a "'crystal-clear legal duty' after they have adjudicated a visa application to then forgo any potentially beneficial administrative processing."  *Id.* (quoting *In re Ctr. for Biological Diversity*, 53 F.4th at 670); *see also Liew v. Sanders*, 737 F. Supp. 3d 30, 37 (D.D.C. 2024) ("[The plaintiff] cannot rely on the 'general directive' in § 555(b) 'to impose a duty that has no basis in the INA or its implementing regulations.'" (quoting *Yaghoubnezhad*, 734 F. Supp. 3d at 102)); *see also Yaghoubnezhad*, 734 F. Supp. 3d at 102 (noting that, although § 555(b) "implies that the agency, at some point, must reach a final decision, it 'does not speak specifically to the duties of consular officers, and it uses the open-ended phrase "within a reasonable time"'" (quoting *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 n.5 (D.D.C. Feb. 7, 2024)).

   Plaintiff's reliance on Section 706(1) of the APA does not meaningfully move the needle either.  *Datta*, 2025 WL 752643, at * 8 ("Plaintiff's reliance on Sections 706(1) and 555(b) of the

---

in this case because the FAM sections they identify either (1) encompass the same duties imposed under the INA and its implementing regulations, thereby adding nothing to the analysis, *see, e.g.*, 9 FAM 504.11-2(A)(a) (requiring consular officers to either "issue[] or refuse[]" the visa "once [it] has been properly completed and executed before a consular officer"); or (2) employ merely aspirational language that falls short of creating a nondiscretionary duty, *see, e.g.*, 9 FAM 504.11-3(A) (noting a supervisory consular officer "should" review a refusal under Section 221(g) "immediately" and "[i]deally . . . on the day of the refusal").  *See Ramizi*, 745 F. Supp. 3d at 263 ("[T]he FAM employs aspirational language ('expects' and 'strive'), not the sort of 'mandatory language' that would 'provide no room for agency discretion.'").

APA, as opposed to solely Section 555(b), does not meaningfully distinguish this case from *Kari-mova*."). It provides that a court may "compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1). Like Section 555(b), it is a general directive that says nothing about a consular officer's obligations with respect to processing visa applications following refusal. Like Section 555(b), "a claim under Section 706(1) 'can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*,' a threshold requirement that [Plaintiff has] not met." *Datta*, 2025 WL 752643, *8 (quoting *Norton*, 542 U.S. at 64). "[A]bsent 'a specific, une-quivocal command' from Congress requiring State to issue 'final' refusals or to complete 'admin-istrative processing,' State has not 'unlawfully withheld' any action that the Court has jurisdiction to 'compel' under § 706(1)." *Yaghoubnezhad*, 734 F. Supp. 3d at 102; *Ramizi*, 745 F. Supp. 3d at 262 (same).

Any reliance on INA Section 1202 is also unavailing. Section 1202(d) provides that "[a]ll nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer."[10] 8 U.S.C. § 1202(d) (emphasis added). It "concludes a [] paragraph describing the documentation that visa applicants must provide and to whom they must provide it." *Ramizi*, 745 F. Supp. 3d at 262 (quoting *Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 469 (E.D.N.C. 2023)); *see* 8 U.S.C. § 1202(b)–(d). "Read in context, this sentence [only] cabins the State Department's discretion as to *who* may review and decide immigrant visa applications," *i.e.*, that is, it directs consular officers, and no one else, to adjudicate visa applications. *Ramizi*, 745 F. Supp. 3d at 262 (alteration in original) (emphasis in original) (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C.

---

[10] To the extent Plaintiff relies on Section 1202(e), it is also unavailing. It provides that "[t]he application for a nonimmigrant visa or other documentation as a nonimmigrant *shall* be disposed of as may be by regulations pre-scribed." 8 U.S.C. § 1202(e) (emphasis added). This subsection merely directs consular officers to "dispose of" nonimmigrant visa applications as directed by regulation, and does not impose any additional, discrete, crystal-clear duty. And, as stated, the regulations direct only that a consular officer "issue" or "refuse" the visa. *See* 22 C.F.R. § 41.121(a).

2022)); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 2021) ("The INA confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.").

In any event, on its face, Section 1202(d) says nothing about consular officers taking further action on a visa application that has been placed in administrative processing following its refusal under Section 221(g).  Even if it does impose a nondiscretionary duty, the Court would find, consistent with the Circuit's decision in *Karimova*, that the duty was fulfilled when the consular officer refused Plaintiff's visa application.[11]  *See Ramizi*, 745 F. Supp. 3d at 262; *Yaghoubnezhad*, 734 F. Supp. 3d at 99–100.  As another judge in this district has held, "the fact that Karimova was moving under the APA and an unreasonable delay theory, but that [a different] plaintiff is moving under the [INA] . . . does not make a difference."  *Ibrahim*, 2024 WL 4103702, at *3.  Both plaintiffs are asking the Court to order the consulate "to adjudicate all visas 'through conclusion.'"  *Id.* (quoting the record).  But "one cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing *was* a conclusion." *Id.* (emphasis in original)); *see Karimova*, 2024 WL 3517852, at *4.[12]

---

[11] Plaintiff similarly points to rules issued pursuant to the INA which require consular officers to "properly and promptly process[] visa applications," and then to "issue" or "refuse" them.  *See* 22 C.F.R. § 41.106 ("Consular officers must ensure that the Form DC-160 or, alternatively, Form DS-156 is properly and promptly processed in accordance with the applicable regulations and instructions."); *id.* § 41.121(a) ("When a visa application has been properly completed and executed in accordance with the provisions of INA and the implementing regulations, the consular officer must issue the visa, [or] refuse the visa . . . "); *id.* § 42.81(a) (same with respect to immigrant visas).  The Court addresses 22 C.F.R. § 41.121 in more detail *supra*, but, as a general matter, any duties imposed by those regulations "were satisfied when [the subject] application was 'refused.'"  *Datta*, 2025 WL 752643, at *8 (citing *Karimova*, 2024 WL 3517852, at *4); *Hemmat*, 2024 WL 4210658, at *4 (same).

[12] Similarly unavailing is Plaintiff's reliance on the various fee schedules for visa applicants to source the duty he claims.  *See* ECF No. 9 at 21, 25; *see also* 31 U.S.C. § 9701(b) (authorizing agencies to "prescribe regulations establishing a charge for a service or thing of value provided by the agency"); 22 C.F.R. §§ 22.1 (establishing a schedule of fees for consular services).  To the extent State Department regulations requiring the collection of visa application fees "create[] a duty to complete the corresponding service," the Court would find that "the consular officer did so by issuing the refusal decision."  *Hemmat*, 2024 WL 4210658, at *4; *Datta*, 2025 WL752643, at *8 (same); *see* ECF No. 1, ¶¶ 5, 57–58.

\* \* \* \* \*

For all these reasons, the Court finds that Plaintiff has not identified a crystal-clear, non-discretionary duty requiring the consular officer to do anything other than what he or she has already done—refuse his visa application under Section 221(g) and place it in administrative processing. That duty having been fulfilled, as the Circuit found in *Karimova*, "nothing in federal law" imposes a nondiscretionary duty on a consular officer to complete the administrative processing and 'make yet another "final decision' on [his] already-refused visa application.'" *Karimova*, 2024 WL 3517852, at \*4, \*6. Rather, any further action the consular officer may take on Plaintiff's refused visa application is discretionary and not subject to the "exceptional and rare relief of an order compelling the consular officer" to do something more—much less to do it more quickly. *Id.* at \*6. As such, Defendants' motion to dismiss must be granted for failure to state a claim under either the APA or the Mandamus Act.

Nonetheless, like other judges, this Court is troubled by the direction the *Karimova* decision leads: "[I]nterpreting the refusal-for-administrative-processing approach to be the conclusion of the matter before the agency has the potential to shield from judicial review unreasonable delays that [would otherwise be] prohibited by the APA." *Awal v. U.S. Dep't of State*, No. 24-cv-382, 2024 WL 4979661, at \*9 (D. Minn. Dec. 4, 2024). It may also incentivize consular officers to "refuse applications out of hand and then begin the true deliberation process thereafter," leaving visa applicants languishing in a state of administrative limbo with "no possibility for judicial oversight of untimely decision making." *Haeri Mehneh*, 2024 WL 5116521, at \*5; *see also Datta*, 2025 WL 752643, at \*8 ("*Karimova* gives agencies carte blanche to administratively process noncitizens' visa applications *ad infinitum* with no avenue for judicial review."). But recognizing that problem and having the power to fix it are two different things.

23

"For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Dep't of State v Munoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Harisiades*, 342 U.S. at 588–89 ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."). Given that these "types of claims generally fall outside the Judicial Branch's wheelhouse," *Karimova*, 2024 WL 3517852, at * 5, the Court agrees with the conclusion of another judge in this District that "the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court." *Datta*, 2025 WL 752643, *9.

### B.    Consular Nonreviewability.

Defendants also argue that Plaintiff's claims should be dismissed for the independent reason that the consular officer's decision to refuse the visa applications was final and therefore not subject to judicial review under the consular nonreviewability doctrine. *See* ECF No. 8 at 15–19. Plaintiff responds that the doctrine does not apply because there has not in fact been final adjudication of his application given that it is still pending administrative processing. *See* ECF No. 9 at 32–37.

Consular nonreviewability "prevents a federal court from second-guessing a United States consular officer's decision to issue or withhold a visa." *Baan Rao Thai Rest.*, 985 F.3d at 1023. The doctrine arises from consular officers' "exclusive" authority "to review applications for visas,

precluding even the Secretary of State from controlling their determinations." *Saavedra Bruno*, 197 F.3d at 1156. Under that doctrine, courts refrain from reviewing "substantive decisions to approve or deny a visa" or commanding particular results. *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 12 (D.D.C. 2022) (emphasis omitted).

That said, judges in this district have found that the nonreviewability doctrine does not bar judicial review of visa applications that have been refused pending administrative processing because such refusals have been interpreted as not "sufficiently final to warrant the application of [the] doctrine." *Vulupala*, 438 F. Supp. 3d at 98; *see, e.g.*, *Nine Iraqi Allies Under Serious Threat v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016) ("[B]ecause the applications . . . remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar [the plaintiffs'] claims."); *Al-Gharawy.*, 617 F. Supp. 3d. at 16 (finding that the consular nonreviewability doctrine did not apply because "the factual allegations in the complaint . . . indicate that no final decision has been made"). These courts have reasoned that such visa applications are "provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11.

*Karimova* casts significant doubt on that analysis. Again, it described a visa refusal under Section 221(g) as a "matter . . . conclude[d]." *Karimova*, 2024 WL 3517852, at *4 (quoting 5 U.S.C. § 555(b)). Despite a consular officer "choos[ing] to place an officially refused application in administrative processing," which "may (or may not)" lead to the refusal being "overcome with new information at a later date," *Karimova* instructs that "[u]nless and until that happens . . . the visa application remains officially refused." *Id.* at *2. *Karimova* thus suggests that "a consular officer's refusal of a visa application is a final decision," which may "upend[] prior decisions examining the consular nonreviewability doctrine." *Datta*, 2025 WL 752643, at *5–6; *see also Ibrahim*, 2024 WL 4103702, at *3 ("While it troubles this Court, one cannot read *Karimova* as saying

25

anything other than a 221(g) refusal and placement in administrative processing *was* a conclusion." (emphasis in original)).

Nonetheless, *Karimova* did not actually decide how the principle of consular nonreviewability applies in the context of a Section 221(g) visa refusal, electing instead to dismiss the visa applicant's Mandamus Act and APA claims because of a failure to identify a non-discretionary duty that the consular officer had not already fulfilled. *See Karimova.*, 2024 WL 3517852, at *6 ("While we need not decide whether [the] principle of nonreviewability applies in this case, which purports to challenge the timing rather than the content of a consular visa decision, that background principle of judicial abstinence underscores the absence of any clear command in law or precedent for the action [the plaintiff] seeks to compel."). The Court will follow *Karimova*'s lead on that point as well, and grant Defendants' motion to dismiss on the same basis while refraining from determining whether the doctrine of consular nonreviewability applies. *Id.*; *see also Datta*, 2025 WL 752643, *6 ("[T]he Court need not determine the extent to which *Karimova* upends prior decisions examining the consular nonreviewability doctrine because there are independent reasons to dismiss plaintiff's claims.").

## IV.    CONCLUSION

For the reasons stated, the Court will grant Defendants' motion to dismiss. Plaintiff has failed to establish that Defendants have a crystal-clear, nondiscretionary duty to take further action on his visa application that has been placed in administrative processing following its refusal under Section 221(g). Rather, the only nondiscretionary duty Plaintiff has identified is for Defendants to "issue" or "refuse" his visa application. That duty was fulfilled when his visa applications was refused by the consular officer. Accordingly, there is nothing for this Court to compel Defendants to do—let alone to do faster. *Ramizi*, 745 F. Supp. 3d at 264.

A separate Order dismissing the complaint will issue.


Date:   July 7, 2025


_____

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE